OPINION
 

 FABE, Justice.
 

 I. INTRODUCTION
 

 In this appeal, Danny Glasen disputes the superior court's decision to deny his request to incorporate the (lasens' 1991 separation agreement into their 1997 divorcee decree. Because we agree with the superior court that the separation agreement was not a final order and that it terminated upon the Cila-sens' reconciliation, we affirm its decision to set aside the separation decree.
 

 II FACTS AND PROCEEDINGS
 

 ~ A. Factual Background
 

 1. The pre-separation relationship
 

 Danny and Gail Glasen met in Hawail in 1984, while Danny was opening a restaurant with business partners there. At that time, Danny was married but estranged from his first wife, and Danny and Gail began living together shortly after they met. During their time in Hawaii, Gail worked with Danny on his restaurant for about six or seven months. After that, Danny sold his interest in the restaurant and the two moved to Cor-dova. Danny obtained a divorce from his former wife shortly thereafter.
 

 From the beginning, Danny and Gail have had an erratic and tumultuous relationship, marked by periods of separation and reconciliation. After moving to Cordova in the summer of 1985, Gail left Danny for a short period before moving back in with him.
 

 
 *721
 
 Gail and Danny had their first child, Drake William (Hasen, in September 1986. After nine months, Gail again left Danny because his "party" lifestyle bothered her. She moved to Morro Bay, California for about a month and a half with the baby.
 

 The couple reconciled, however, and got married in August 1987 in Reno. Gail returned to Cordova with Danny and stayed there until their daughter Meriah Victoria was born in June 1988. The Glasens bought a luxury home in Malibu, California, for $550,000 in 1988. Gail lived there with the children until August 1998, while Danny remained in Cordova and intermittently visited the Malibu home.
 

 2. The separation agreement
 

 In July 1991 Danny filed a complaint for legal separation and, through his attorney, prepared a separation agreement for Gail to sign. The separation agreement characterized nearly all property, except for the Malibu home and the Glasens' yacht, as Danny's separate property to which he was entitled. This property included, for example, the Cor-dova home, the Cordova cabin, Orea Oil stock, an escrow account, land in Cordova, Danny's pension, and other property and resources. Notably, the separation agreement did not contain any values for any marital or separate property, any marital or separate debts, or either of the parties' salaries or income.
 

 As for the Malibu house, the agreement stated that after satisfying all debts and reimbursing Danny for his mortgage and maintenance payments, Gail should receive the sale proceeds. In addition, the agreement stated that Danny and Gail would jointly own the yacht and be equally responsible for all related expenses. .
 

 The parties agreed to joint custody of their children, and Danny agreed to pay $2,000 a month in temporary child and spousal support. Gail signed the agreement without the assistance of counsel because she "trusted Danny, and she just wanted to make Danny happy and sign it."
 

 Shortly after Gail signed the agreement, the superior court granted a decree of legal separation incorporating the agreement. During the hearing-at which Gail was not present-Danny assured the standing master that Gail would receive between $450,000 and $600,000 from the sale of the Malibu home after expenses. They also assured the master that the settlement agreement would obviate the need for spousal support. When Danny and Gail ultimately sold the Malibu home, however, they barely made enough money to cover their costs and netted only $419.89. Finally, Danny testified that the agreement would allow for future reconciliation.
 

 3. The post-separation relationship
 

 After the superior court entered the decree of legal separation in 1991, the Glasens remained married and reconciled a few months later. Their sexual relationship resumed, and their marital relations continued as they had before the separation. For the next two years Gail lived in the Malibu home while Danny commuted from Cordova to visit. Then Gail moved back to Cordova with the children to be with Danny and enroll Drake in school. The Glasens remained in Cordova together for two more years.
 

 During this entire period-from 1991 through 1996-Danny and Gail remained a financial and marital unit. They filed joint tax returns, maintained joint credit cards, and also kept a joint bank account. Moreover, Danny voluntarily supported Gail and the children by wiring them money, paying bills, and depositing money in the joint banking account. The Malibu home remained in joint title.
 

 In January 1996 Gail and the children moved to Juneau so that Gail could pursue her education. But even then, she returned to Cordova during the summer with the children to be with Danny.
 

 In the spring of 1997 Danny and Gail decided to move to Cambria, California, and buy a home there. They flew to California together to look for real estate and business opportunities. Before they could make the move, however, Danny and Gail had an argument that precipitated the present divorce action. Danny filed for divorce in July 1997
 
 *722
 
 and sought to enforce the 1991 separation agreement.
 

 B. Procedwral History
 

 After Danny filed for divorce in July 1997, he requested that the 1991 separation agreement be merged into the divorcee decree. Superior Court Judge Elaine M. Andrews granted the divorce, but declined to incorporate the 1991 agreement into the divorce decree. Instead, Judge Andrews scheduled an evidentiary hearing to determine whether the agreement was valid and enforceable. The superior court did award visitation and custody under the terms of the 1991 agreement, but required that child support conform to Alaska Civil Rule 90.8 guidelines. The court also ordered interim spousal support and attorney's fees for Gail.
 

 Ultimately, the superior court determined that although it had authority to enter the decree of legal separation in 1991, the separation decree was interlocutory rather than final. On alternative grounds, the superior court concluded that Gail had met the Civil Rule 60(b)(6) requirements to set aside the decree. Finally, the superior court determined that under a post-nuptial contract analysis, the 1991 agreement did not "meet the fair and reasonable test or survive an equitable estoppel analysis." The court entered a Rule 54(b) certification of final order, and Danny timely appealed.
 

 III. STANDARD OF REVIEW
 

 To the extent that this case presents a question of law, we exercise our independent review.
 
 [1]
 
 We will disturb the superior court's factual findings only if those findings are clearly erroneous.
 
 [2]
 
 "It is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."
 
 [3]
 

 Moreover, we "will not disturb a trial court's grant of a Rule 60(b) motion except upon a showing of an abuse of discretion."
 
 [4]
 
 And we will find an abuse of discretion only when "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."
 
 [5]
 

 IV. DISCUSSION
 

 A. The Superior Court's Authority to Emter the Separation Decree
 

 Gail argues as a preliminary matter that the superior court lacked authority to enter the separation decree in 1991 because actions for legal separation do not exist in Alaska. After finding "inferential authority recognizing the validity of separation agreements," the superior court concluded that it possessed jurisdiction when it granted the decree in 1991.
 

 Although there is no statute that directly authorizes courts to enter separation decrees, the superior court reasoned that the legislature's references to "legal separation" in statutes pertaining to child custody and support indicate that individuals may bring such actions. The superior court noted that although some statutes refer to "legal separation," these provisions do not specifically authorize courts to grant legal separations.
 
 [6]
 
 Danny, on the other hand, maintains that because actions for separate maintenance exist at common law, the superior court possessed authority to enter the separation decree here.
 

 We need not decide in this case whether courts in Alaska may enter decrees of legal separation. Instead, we affirm the superior court's decision because we conclude that the decree, even if authorized, was not a final order and that the Hlasens' reconciliation dissolved the decree.
 

 
 *723
 
 B. The Separation Decree's Status as an Interim Order
 

 Danny disputes the superior court's conclusion that the CHasens' 1991 separation agreement was not a final property division. We agree with the superior court that the legal separation decree was an interim order that was "provisional and conditional, affording an opportunity for reconciliation."
 
 [7]
 
 First, Danny's testimony from 1991 indicates that he did not intend the separation to be final. He and Gail specifically chose to separate rather than divorce because they believed they might still reconcile.
 
 [8]
 
 Danny testified that "we don't want to totally, even though we can't get along, we're incompatible right now, we don't want to totally close the door on it for the future if something does happen we can get together." Thus, Danny himself believed that he and Gail might reconcile, indicating that the separation was not a permanent arrangement.
 

 Moreover, the test of a final judgment "is essentially a practical one."
 
 [9]
 
 We have stated:
 

 The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, "... one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Further, the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment, and focus primarily on the operational or "decretal" language therein.
 
 [10]
 

 The Glasens' decree of legal separation fails this test of finality, for it provides that the child custody and property settlement agreement "shall be incorporated in any final judgment issued in this action or in any decree of divorce where ever issued...." This clearly implies that the separation decree itself is not the "final judgment issued in this action." Further, the decree demonstrates that it is only a stepping stone on the path to divorce as it provides that "at any time hereafter either party may ... calendar an uncontested divorce hearing for the purpose of terminating the parties' marriage." Thus, the separation decree was an interim rather than a final order.
 

 Finally, a contract that purports to embody a final property distribution, but which does not list or describe all of the spouses' property or assets, is invalid as a final property division.
 
 [11]
 
 The Glasens' separation agreement did not fully list or describe all of the marital property that existed in 1991. Indeed, the Glasens may have continued to acquire marital property or debt from 1991, when the separation decree was entered, to 1997, when Danny filed for divorce. Because the GHlasens continued their marital relationship for approximately six years after the initial settlement agreement, that agreement could not have embodied a final property division.
 

 
 *724
 
 We conclude that the Glasens' decree of legal separation could not be a final judgment. Thus, even assuming that Alaska law authorizes entry of a separation decree, the (Glasens' separation decree was valid only insofar as it settled certain support and property issues between the spouses while they were separated.
 

 C. The Glasens' Reconciliation
 

 It is well recognized that a’legal separation decree ordinarily terminates "if the parties become reconciled and resume cohabitation."
 
 [12]
 
 The superior court found that Danny and Gail reconciled about three months after the separation decree was entered. Danny asserts that because Gail committed adultery during their separation and sporadically lived in California, the superior court erred in concluding that they reconciled. Gail counters that they reconciled within a few months of their separation, and that "nothing changed in the pattern of their marriage."
 

 Although we have never defined "reconciliation" expressly, one authority has stated that
 

 reconciliation means a voluntary resumption of marital cohabitation in the fullest sense. This ordinarily requires living together as husband and wife, engaging in sexual relations, and where possible, establishing a joint domicile.
 

 [[Image here]]
 

 But a reconciliation may be found to exist without the resumption of a matrimonial domicile if the parties live together as constantly as the cireumstances permit.
 
 [13]
 

 In addition, when spouses reconcile and indicate through their conduct "the intention of rescinding the separation agreement in whole or in part, effect should be given to their action."
 
 [14]
 

 In this case the superior court found sufficient facts to support its conclusion that Danny and Gail had reconciled:
 

 After the separation agreement was ordered, the couple cohabitated [sic] and had sexual relations. They filed joint tax returns for the years between the legal separation and the divorce. In all ways Danny and Gail operated as a marital unit. Danny did not pay child support as the parties contemplated in the Separation Agreement, because the (Glasens functioned as a family unit.
 

 The record supports the superior court's findings: Danny and Gail maintained both a commuter relationship and a cohabitation relationship, and they continued to function as an economic unit. They filed joint tax returns, maintained joint credit cards, and also kept a joint bank account. As the trial court found, the Glasens' reconciliation, cohabitation, and economic commingling indicated an intent to behave as a marital unit and rescind their separation agreement. Based on these facts, we conclude that the superior court did not err in finding that the Hlasens reconciled.
 

 Thus, the Masens' reconciliation after their separation provides a separate basis for affirming the superior court's decision not to incorporate the separation decree into the divoree decree.
 

 D. Interim Alimony and Interim Attorney's Fees
 

 Danny also argues that the superior court erred in awarding interim alimony and attorney's fees to Gail. The superior court did not, however, certify those awards as final orders under Civil Rule 54(b);, it only certified its decision to set aside the separation decree.
 
 [15]
 
 
 *725
 
 Thus, the interim alimony and attorney's fees awards are not proper matters for appeal, and we therefore do not decide whether the superior court erred in granting those awards.
 

 V. CONCLUSION
 

 Because the Glasens' 1991 separation decree was not a final judgment, we AFFIRM the superior court's decision to deny Danny's request to incorporate the separation agreement into the 1997 divorcee decree.
 

 [1]
 

 . See Knutson v. Knutson, 973 P.2d 596, 599 (Alaska 1999).
 

 [2]
 

 . See id.
 

 [3]
 

 . Id. at 599-600.
 

 [4]
 

 . McGee v. McGee, 974 P.2d 983, 987 (Alaska 1999) (quotation omitted).
 

 [5]
 

 . Id. (quotation omitted).
 

 [6]
 

 . See AS 25.24.150(a) (governing child custody judgments); AS 25.27.900(5) (governing the Child Support Enforcement Agency).
 

 [7]
 

 . 24 Am.Jur.2d Divorce & Separation § 409, at 571 (1998). The treatises also refer to legal separation as "limited divorce" and "judicial separation," noting that there are no meaningful distinctions between these terms. See Judge Joyce Hens Green et al., Dissolution of Marriage § 3.02, at 125 (1986) (''The limited divorce is also called ... legal separation, or judicial separation."); 24 Am.Jur.2d Divorce & Separation § 1, at 229 (1998) ("Absolute divorce ... is a judicial dissolution of the marriage ... whereas limited divorce, sometimes referred to as ... legal separation is a change in status by which the parties are separated and are precluded from cohabitation, but the actual marriage is not affected."). Thus, we refer to the action in this case as simply "legal separation."
 

 [8]
 

 . States that recognize legal separation as an action distinct from dissolution or separate maintenance provide for termination or revocation of the separation decree upon reconciliation. See Or .Rev.Stat. § 107.475 (1999) (requiring courts to fix duration of legal separation decree and providing that when the judicially determined time expires, "the decree shall have no further effect"); Wis.Stai. Ann. § 767.09 (West 1993) ("A decree of separation shall provide that in case of a reconciliation at any time thereafter, the parties may apply for a revocation of the judgment.").
 

 [9]
 

 . City and Borough of Juneau v. Thibodeau, 595 P.2d 626, 628 (Alaska 1979).
 

 [10]
 

 . Matanuska Maid, Inc. v. State, 620 P.2d 182, 184-85 (Alaska 1980).
 

 [11]
 

 . See Lacher v. Lacher, 993 P.2d 413, 419-20 (Alaska 1999); Musser v. Johnson, 914 P.2d 1241, 1242 (Alaska 1996) 24A Am.Jur .2d § 1111, at 533 (citations omitted).
 

 [12]
 

 . 24 Am.Jur.2d Divorce & Separation § 409, at 572 (1998). Some jurisdictions that statutorily authorize judgments for legal separation require the parties to make a joint application to the court for an order of termination. See id. and n. 61. In many jurisdictions, however, the separation decree automatically terminates, or its effect is destroyed, once the parties reconcile. See id. and n. 60.
 

 [13]
 

 . Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 19.7, at 437-38 (1998) (footnotes omitted); see also 24 Am.Jur.2d Divorce & Separation § 34, at 253-54 ("If the parties resume the marital relationship by unequivocal acts, it is said that the parties have reconciled, even if the reconciliation fails after a short time.") (citation omitted).
 

 [14]
 

 . Clark, supra note 13, § 19.7, at 439.
 

 [15]
 

 . Alaska R.Civ.P. 54(b) states:
 

 When more than one claim for relief is presented in an action, ... the court may direct
 
 *725
 
 the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.