*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WILLIAM EBERT, HOLLY EBERT, and CONNIE J., | ) ) ) | Supreme Court Nos. S-15130/15219 (Consolidated) |
| Appellants, | ) ) | |
| v. | ) ) | Superior Court Nos. 3PA-07-02189 CI 3PA-08-00145 PR |
| BRUCE L., | ) ) | O P I N I O N |
| Appellee. | ) ) ) | No. 6976 - December 26, 2014 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Christi A. Pavia, Pavia Law Office LLC, Anchorage, for Appellant Connie J. Lisa B. Nelson, Law Office of Lisa B. Nelson, LLC, Anchorage, for Appellants William Ebert and Holly Ebert. Ann L. DeArmond, Sterling & DeArmond P.C., Wasilla, for Appellee Bruce L.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I. INTRODUCTION

A married couple sought to adopt an Indian child over the objection of the biological father, who wished to maintain visitation rights. The couple and the biological mother appeal the superior court's denial of the adoption, claiming that the biological father's consent to the adoption was unnecessary. Under AS 25.23.050(a)(2)(B), the

consent of a noncustodial parent is not required for adoption if that parent unjustifiably fails to support the child. But the superior court did not clearly err by concluding that the biological father had justifiable cause for his failure to support the child. We affirm.

## II.     FACTS AND PROCEEDINGS

Bruce L. and Connie J. began a relationship in August 2006.[1] Their relationship was somewhat tumultuous, with at least one period of separation during the fall of 2006. In November Connie told Bruce that she was pregnant and was considering giving up the child for adoption. Bruce objected to the adoption. After a final attempt to repair their relationship, Bruce and Connie separated permanently in January 2007.

Sometime in early 2007, Connie approached Holly and William Ebert, a married couple she knew from church, about adopting her child. Connie wanted the Eberts to adopt her child because she thought they would be loving parents and because they shared her religious values. The Eberts agreed to the adoption.

In June 2007, before the child was born, the Eberts met with Bruce "to discuss a consent to adopt." Under AS 25.23.040(a)(2), a biological father must typically grant written consent before an adoption can proceed. However, there are a number of exceptions to this consent requirement, including AS 25.23.050(a)(2), which allows an adoption to proceed without a noncustodial parent's consent in cases where the parent has failed to "communicate meaningfully with the child" or "provide for the care and support of the child" for at least one year. Bruce refused to consent and announced his intent to take custody of the child when he returned from working on a commercial fishing boat in August. He also suggested two other men might be the child's father, though he later testified that he made this statement only to "put a hitch in the adoption."

---

[1]     Pseudonyms are used for all persons involved.

Timothy was born in July 2007. The Eberts took custody of him immediately and filed an adoption petition in late August 2007. In September Bruce, acting pro se, filed a document in the adoption proceeding, asserting that he was the child's biological father and asking the court for "full physical and legal custody." The court denied Bruce's motion for custody without prejudice but made Bruce a party to the adoption proceeding.

Bruce, then represented by appointed counsel, filed a motion to establish paternity in December 2007. Soon thereafter the Eberts voluntarily dismissed their adoption petition. As a result of this dismissal, Bruce lost his right to appointed counsel. When later asked why they decided to dismiss the petition, William Ebert explained:

> [Bruce] had yet to make an individual effort on his own to commence any sort of proceeding. And knowing the kind of person he is, once again, we decided that we wanted to make it his initiative instead of ours that was [moving forward the paternity establishment] process.

In late December 2007, Bruce, again acting pro se, filed a complaint for custody of Timothy. In July 2008 Bruce moved to set the case for trial. A few days later, the Eberts filed a second adoption petition and intervened in Bruce's custody case. The superior court ordered paternity testing, and Bruce obtained a positive result. The court appointed counsel for Bruce and consolidated the adoption and custody cases.

The superior court ordered an interim custody arrangement after a hearing in December 2008. The court granted physical custody to the Eberts and semiweekly visitation to Bruce. The court also ordered Bruce to pay $50 per month in child support, retroactive to August 1, 2007; over the next four months, Bruce paid a total of $200 in support. It is undisputed, however, that Bruce paid no child support before being ordered to do so at the December 2008 hearing. He later testified that he did not realize he had a child support obligation and that the Eberts never applied to the Child Support Services

Division for child support. Bruce claimed he was under the impression that the Eberts were wealthy and did not need his financial assistance.

In May 2009 the superior court held a trial on the adoption petition and the custody dispute. In post-trial briefing, Bruce argued that the Indian Child Welfare Act[2] (ICWA) compelled the court to grant Bruce custody of Timothy, an Indian child, and prevented the Eberts from adopting Timothy without Bruce's consent. The Eberts argued that Bruce could not invoke ICWA to prevent the adoption because he was not a "parent" for purposes of the statute until he established paternity on October 10, 2008. They also argued that ICWA § 1912(d)'s "active efforts" provision[3] does not apply in a private adoption, particularly when the parent seeking to invoke ICWA has no meaningful connection to any tribe. And they maintained that, even if ICWA applied, the supervised visitation provided to Bruce was adequate to fulfill the active efforts requirement. Finally, they argued that Bruce's consent to the adoption was not required under state law because Bruce could not show that his failure to communicate with or support Timothy during the child's first year of life was justifiable.[4] Connie, who continued to support the adoption, made arguments similar to the Eberts'.

---

[2]    25 U.S.C. §§ 1901-63 (2012).

[3]    25 U.S.C. § 1912(d) ("Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.").

[4]    *See* AS 25.23.050(a)(2) ("Consent to adoption is not required of . . . (2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency, (A) to communicate meaningfully with the child, or (B) to provide for the care and support of the child as required by law or judicial decree[.]").

Following the trial, the superior court granted the adoption petition. The court concluded that Timothy was "not an 'Indian Child' within the meaning of the Indian Child Welfare Act" and that ICWA therefore did not apply to the Eberts' adoption petition. As to AS 25.23.050(a)(2), the court concluded that "there is clear and convincing evidence of the [Eberts'] physical custody of [Timothy] for more than a year without support or communication by [Bruce]" and that "[Bruce] has not produced 'justifiable cause' for the failure to communicate with or support the child."

Bruce appealed the 2009 adoption decree to this court.[5] In *Bruce L. v. W.E.* we concluded that "[i]t was an abuse of discretion to conclude Timothy is not an Indian child without giving the parties notice that the trial court considered the issue in dispute"[6] and that "Bruce's failure to establish paternity before the completion of the one-year period of nonsupport and noncommunication did not render ICWA § 1912(d) and (f) inapplicable."[7] We also held that, under state law, "the Eberts did not meet their burden of proving by clear and convincing evidence that Bruce unjustifiably failed to communicate meaningfully with Timothy for one year."[8] And "[b]ecause Bruce produced some evidence of justifiable cause" for his failure to support Timothy, we held that the Eberts should have been required to rebut this showing "by clear and convincing

---

[5]     *See Bruce L. v. W.E.*, 247 P.3d 966 (Alaska 2011).

[6]     *Id.* at 974.

[7]     *Id.* at 977. 25 U.S.C. § 1912(f) provides: "No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

[8]     *Id.* at 981.

evidence."[9] We therefore "vacate[d] the termination of [Bruce's] parental rights and the adoption decree and remand[ed] for further proceedings."[10] We required the superior court to reconsider three issues: whether Timothy qualified as an Indian child under ICWA, whether the Eberts had satisfied ICWA's requirements for the termination of Bruce's parental rights, and whether Bruce's failure to provide support was justified.[11]

On remand, the superior court ordered that the earlier interim custody order would remain undisturbed, keeping Timothy in the Eberts' physical and legal custody. Bruce's supervised visitation continued, subject to certain restrictions.

Another trial was held beginning in June 2012 and extending to December. Connie and the Eberts argued that Bruce had no justifiable cause for his failure to pay support and therefore could not object to the adoption under AS 25.23.040. As to ICWA,[12] they argued that they had met § 1912(d)'s active efforts requirement by providing remedial services to Bruce. And they argued that their expert witness's report and testimony provided sufficient proof under § 1912(f) that placing Timothy with Bruce would cause the child serious emotional harm.

Bruce responded that Connie and the Eberts had not shown that they made "active efforts . . . to prevent the break up of the Indian family and that those efforts were unsuccessful," "established beyond a reasonable doubt that the issuance of an order granting [Bruce] appropriate visitation with [Timothy] would cause serious physical or emotional damage to [Timothy]," or established "by clear and convincing evidence that

---

[9]     *Id.* (internal quotation marks omitted).

[10]    *Id.* at 969.

[11]    *Id.*

[12]    At the beginning of the second trial, the parties stipulated that Timothy was an Indian child for purposes of ICWA.

[Bruce] was without justifiable cause in failing to pay child support between July of 2007 and December of 2008."

After trial, the superior court denied the adoption petition. The court dismissed the argument that ICWA § 1912(d) did not apply until Bruce proved he was Timothy's father, noting our rejection of a similar argument in the first appeal.[13] And the court found that, although the Eberts had made active efforts to provide remedial services to Bruce, they had not "demonstrate[d] that those efforts proved to be unsuccessful":[14]

> [W]hile there certainly were ample reasons for concern regarding [Bruce's] ability to be a parent during the time of the first adoption trial, [Bruce] has taken the steps necessary to resolve the many issues he faced. Put differently, the remedial measures did succeed, at least enough that there is no present evidence that [Bruce] cannot be an adequate parent for [Timothy].

Therefore, the court concluded, the Eberts had not met the requirements of ICWA § 1912(d).

As to ICWA § 1912(f), the court found that Connie and the Eberts had not shown, beyond a reasonable doubt, that Timothy would suffer serious emotional or physical harm if "[Bruce] is allowed to retain some custodial rights to [Timothy]." The court noted that although an expert witness had concluded "that denying the adoption and enabling [Bruce] to participate as [Timothy's] named father was likely to cause [Timothy] serious emotional harm[,] . . . when the court asked her if she could conclude beyond a reasonable doubt that [Timothy] would suffer serious emotional harm, she answered 'no.' " The court interpreted the witness's assessment "as an indication that

---

[13]     *See Bruce L.*, 247 P.3d at 978-79.

[14]     *See* 25 U.S.C. § 1912(d) (2012).

it is possible to structure visitation and the process by which [Timothy] learns that [Bruce] is his father in a manner that will avoid serious emotional harm."

Finally, the superior court concluded that ICWA preempted AS 25.23.050(a)(2)(B). Because of this preemption, the court reasoned, it could not "rely on AS 25.23.050(a)(2)(B) to authorize the adoption." The court nevertheless found that, if AS 25.23.050(a)(2)(B) did apply, Connie and the Eberts had not presented clear and convincing evidence that Bruce's failure to support Timothy lacked justifiable cause.

The superior court issued an interim custody order, finding it in Timothy's best interests to grant the Eberts primary physical and sole legal custody. Bruce was permitted supervised visitation, and the Eberts were ordered "to hire a licensed professional counselor . . . to arrange for less restrictive visitation." The court also ordered Bruce to pay $50 per month in child support.

Connie and the Eberts appeal.

## III.    STANDARD OF REVIEW

"We review questions of law de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[15]

A court's determination as to whether "a parent's failure to communicate or support a child was without justifiable cause is a finding of fact that we review for clear error."[16] "Factual findings are clearly erroneous if a review of the entire record in

---

[15]    *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 325 (Alaska 2012) (citation omitted) (internal quotation marks omitted).

[16]    *Bruce L.*, 247 P.3d at 973 (citation omitted).

the light most favorable to the prevailing party leaves us with a definite and firm conviction that a mistake has been made."[17]

## IV. DISCUSSION

### A. The Indian Child Welfare Act Does Not Preempt AS 25.23.050(a)(2)(B).

None of the parties argue on appeal that ICWA preempts AS 25.23.050(a)(2)(B). But the superior court concluded that it did, and that the court could not "rely on AS 25.23.050(a)(2)(B) to authorize the adoption."

The superior court was apparently concerned that there was a serious conflict between ICWA and the state adoption statute. "Conflict preemption occurs when a state law and a federal law are in conflict, either because compliance with both state and federal law is impossible or because the state law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress."[18]

We see no such conflict here. Alaska Statute 25.23.050(a)(2)(B) does not automatically permit an adoption when a biological parent unjustifiably fails to provide for the care and support of a child. Instead, it provides an exception to AS 25.23.040's requirement that a petition to adopt a minor may be granted only if the parents consent. Even when AS 25.23.050(a)(2)(B) nullifies AS 25.23.040's consent requirement, the adoption of an Indian child does not automatically go forward.[19] Other state adoption requirements must still be met, and ICWA protections may remain available. Alaska's

---

[17] *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009) (citation omitted).

[18] *Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1162 (Alaska 2009) (internal quotation marks omitted).

[19] *See, e.g.*, AS 25.23.100 (setting forth the legal procedures that must occur before an adoption may proceed).

adoption statutes and ICWA offer complementary layers of protection to biological parents; there is no conflict between the state and federal statutes.[20]

For these reasons, ICWA does not preempt AS 25.23.050(a)(2)(B).

**B.      Bruce Is A Parent For Purposes Of AS 25.23.040 And .050.**

Although the superior court concluded that AS 25.23.050(a)(2)(B) is preempted by ICWA and therefore could not provide a basis for a decision in this case, the court nevertheless reached the merits of the parties' AS 25.23.040 and .050 arguments in order to "provid[e] a full record in the event of an appeal."

Connie and the Eberts argue that Bruce cannot rely on AS 25.23.040 to prevent the adoption because "Bruce failed to timely legitimate Timothy under State law" within the first year of the child's life. But we have held that a putative father may establish paternity "at any time before the entry of a decree of adoption."[21] If the father establishes his paternity, then his consent is required unless it is excused by the other provisions of the adoption statute.[22]

A father may establish paternity by proving the issue to the superior court.[23] Bruce filed positive paternity test results with the superior court in 2008. The Eberts did not challenge the results and expressly argued that Bruce established his paternity when

---

[20]      *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 334 P.3d 165, 180 n.17 (Alaska 2014) (Winfree, J., dissenting) ("Congress clearly intended that [ICWA] exist side-by-side with the child custody laws of the 50 states and necessarily understood that the courts of those states would and should attempt to harmonize, not presume conflicts between, the two." (quoting *In re Brandon M.*, 54 Cal. App. 4th 1387, 63 Cal. Rptr. 2d 671, 677-78 (1997))).

[21]      *In re Adoption of L.A.H.*, 597 P.2d 513, 517 (Alaska 1979).

[22]      AS 25.23.040(a)(2).

[23]      AS 25.20.050(a)(4).

he filed them. Therefore, by the time of the first trial on the Eberts' adoption petition in May 2009, Bruce was a father who had "legitimated [Timothy] under the laws of the state."[24] Thus Bruce's consent was required unless the Eberts could establish that it was excused under the terms of the statute.[25]

### C. The Superior Court Did Not Clearly Err In Finding That Bruce's Failure To Support Timothy Was Justifiable.

Connie and the Eberts contend that, even if Bruce is "the father of the minor" for the purposes of AS 25.23.040, he forfeited his right to object to the adoption by unjustifiably failing to support Timothy during the child's first year of life.[26]

Under AS 25.23.050(a)(2)(B), the consent of a noncustodial parent is not required for an adoption if the parent "for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency, . . . to provide for the care and support of the child as required by law or judicial decree." "The long-established and continuing rule in Alaska is that absent the element of willfulness, a parent does not lose the right to consent under AS 25.23.050(a)(2)."[27] If a natural parent produces evidence that failure to support the child is justifiable, the burden shifts

---

[24]   *See* AS 25.23.040(a)(2).

[25]   *See id.*; AS 25.23.050.

[26]   Connie and the Eberts also argue that Bruce failed "to meaningfully communicate with Timothy" during the child's first year of life. *See* AS 25.23.050(a)(2)(A). They ask us to vacate *Bruce L.*'s holding to the contrary. But the law of the case doctrine "generally prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case" unless "there exist exceptional circumstances presenting a clear error constituting a manifest injustice." *See Beal v. Beal*, 209 P.3d 1012, 1016-17 (Alaska 2009) (internal quotation marks omitted). Connie and the Eberts provide no compelling reason to revisit the *Bruce L.* decision.

[27]   *In re Adoption of J.M.F.*, 881 P.2d 1116, 1118 (Alaska 1994).

to the petitioner for adoption, who must then "show by clear and convincing evidence that the natural parent's failure to support was without justifiable cause."[28] Because we previously held that Bruce had produced some evidence of justifiable cause,[29] Connie and the Eberts were required to rebut Bruce's showing by clear and convincing evidence. After weighing the evidence, the superior court found that they had not carried their burden. We review this finding for clear error only.

The superior court provided several reasons for its finding. First, although Bruce had some income, "it was minimal, and much was taken to support his other children." Second, "the [Eberts] neither needed nor asked for any support from [Bruce]" and "[Bruce's] testimony indicates that he would have been willing to pay something had the [Eberts] asked him to do so." Finally, Bruce "testified credibly" that he was unaware he had a legal obligation to pay support to the Eberts.

Connie and the Eberts argue that Bruce's indigence cannot justify his failure to pay child support because "[c]ircumstances resulting from the noncustodial parent's own conduct cannot excuse such a parent's significant failure to provide support."[30] They argue that Bruce's failure to support Timothy was the result of life choices within his control. For example, Connie and the Eberts assert that Bruce "was underemployed due to his reckless lifestyle," and that his child support obligations arose because he chose to "sire[] four children under the age of five in about five years."

---

[28]    *Id.*

[29]    *Bruce L. v. W.E.*, 247 P.3d 966, 981 (Alaska 2011).

[30]    *In re J.J.J.*, 718 P.2d 948, 953 (Alaska 1986).

-12-                                                    6976

But there was ample evidence of Bruce's poor financial status, and Bruce's life choices were only a partial cause of his indigence.[31]  Although Bruce earned about $5,000 working on a commercial fishing boat during the summer of 2007, he was unemployed between August 2007 and January 2008 and reported only $9,316 in income on his 2007 federal tax return.  In 2008 Bruce worked only temporary part-time jobs, earning between $15 and $25 per hour.  And in the summer of 2008, he took college classes, paid for with student loans and GI Bill benefits.  These facts support the superior court's finding that Bruce's indigence contributed to his failure to support Timothy.  And Bruce's indigence existed despite at least some efforts on his part to find work and improve his prospects through education.

Connie and the Eberts also argue that AS 25.23.040 does not apply because Bruce failed to pay "significant" support.  But whether Bruce provided significant financial support was not at issue, as both the *Bruce L.* decision[32] and the superior court's order make clear.  Rather, the operative question was whether Bruce's admitted lack of support was *justifiable*.

The superior court did not clearly err in concluding that the Eberts did not prove, by clear and convincing evidence, that Bruce lacked justifiable cause for his failure to pay them child support.  Therefore, under AS 25.24.040, Bruce's consent is required before the Eberts can adopt Timothy.[33]

---

[31]     *Cf. David S. v. Jared H.*, 308 P.3d 862, 869-70 (Alaska 2013) (upholding finding that father's failure to communicate was unjustifiable when father was incarcerated for majority of child's life).

[32]     *Bruce L.*, 247 P.3d at 981.

[33]     Connie and the Eberts raise interesting questions about the superior court's conclusion that they failed to meet the requirements for termination of parental rights under ICWA.  They contend that under *Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552

**D.** **No Special Circumstances Justify Reviewing The Superior Court's Interim Custody Order.**

Connie and the Eberts also appeal the superior court's order granting Bruce supervised visitation in the related custody litigation. But it is clear from the record that this order was an interim order only, and that the court had not yet scheduled a trial on Bruce's complaint for custody.[34] As a result, there is no final order on the visitation issue that would support an appeal.[35] We therefore dismiss the appeal of the interim custody order.

## V. CONCLUSION

We AFFIRM the superior court's judgment denying the petition for adoption.

---

(2013), ICWA does not apply to the present case. But because Bruce's consent was required for the adoption under state law, it is not necessary for us to reach these issues. *Cf. id.* at 2559 ("Under state law, [Biological] Father's consent to the adoption would not have been required.").

[34] *Cf. D.L.M. v. M.W.*, 941 P.2d 900, 903 (Alaska 1997) (discussing the difference between a final decree denying a petition for adoption and an interim order entered in related custody litigation).

[35] *See* Alaska R. App. P. 202(a); *Conservatorship Estate of K.H. v. Cont'l Ins. Co.*, 73 P.3d 588, 595 (Alaska 2003) (concluding that an interim order was not appealable); *Glasen v. Glasen*, 13 P.3d 719, 723 (Alaska 2000) (concluding that an interim separation decree was not a final judgment); *see also Nevitt v. Provost*, Mem. Op. & J. No. 1201, 2005 WL 327219, at *2 (Alaska Feb. 9, 2005) ("Interim child custody orders are not final judgments as they are inherently temporary.").