NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRUCE L., | ) | |
| | ) | Supreme Court No. S-16595 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-16-00206 PR |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| WILLIAM EBERT, HOLLY EBERT, | ) | AND JUDGMENT* |
| and CONNIE J., | ) | |
| Appellees. | ) | No. 1684 – July 25, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Michael Spaan, Judge.

Appearances: Ann L. DeArmond, Sterling & DeArmond P.C., Wasilla, for Appellant. Jennifer L. Holland, Law Offices of Jennifer L. Holland, Anchorage, for Appellees William Ebert and Holly Ebert. No appearance by Appellee Connie J.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

The mother of an Indian child arranged for his adoption by a non-Indian family; the family took custody of him the day he was born. When the prospective adoptive parents filed for adoption, the baby's father refused to consent to the adoption and filed for custody. The superior court granted the adoption after finding the father's

---

\*        Entered under Alaska Appellate Rule 214.

consent was not required because he had failed to financially support the child for a one-year period. We reversed the adoption.[1] On remand the superior court denied the petition for adoption; we upheld the denial on appeal.[2] The prospective adoptive parents filed another petition for adoption eight months later, alleging the father's consent was not required because he had failed to pay child support for a new one-year period. The superior court granted the adoption and the father appeals. We affirm the superior court's decision.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Timothy was born in July 2007 to Connie J. and Bruce L.[3] His parents' relationship ended before he was born.[4] Connie is a member of a Native tribe and Timothy is an Indian child as defined by the Indian Child Welfare Act (ICWA).[5] His adoption has been the subject of litigation for more than ten years; this is the third appeal from the superior court.[6]

Before Timothy was born, Connie asked William and Holly Ebert to adopt Timothy, and the Eberts agreed.[7] Bruce refused to consent to the adoption but agreed the

---

[1]     *Bruce L. v. W.E.*, 247 P.3d 966 (Alaska 2011).

[2]     *Ebert v. Bruce L.*, 340 P.3d 1048 (Alaska 2014).

[3]     Pseudonyms have been used to protect the parties' privacy.

[4]     *Ebert*, 340 P.3d at 1050.

[5]     *See* 25 U.S.C. § 1903(4) (2012). The parties stipulated that Timothy is an Indian child for the purposes of ICWA. *Ebert*, 340 P.3d at 1052 n.12.

[6]     *See Bruce L.. v. W.E.*, 247 P.3d 966 (Alaska 2011); *Ebert*, 340 P.3d 1048.

[7]     *Ebert*, 340 P.3d at 1050.

Eberts could take care of Timothy after he was born.[8]  Timothy has lived with the Eberts for his entire life.

### B.    Proceedings

#### 1.    The previous appeals

The Eberts first petitioned to adopt Timothy in August 2007 but later requested to dismiss the petition.[9]  In response Bruce filed for custody of Timothy in September 2007.[10]  That case was dismissed along with the Eberts' adoption petition.[11]  Bruce filed again for custody of Timothy in December.[12]

The Eberts filed a second adoption petition in July 2008.[13]  Bruce, having established his paternity of Timothy, contested the adoption.[14]  The superior court found Bruce's consent to the adoption was not required pursuant to AS 25.23.050 because he had failed to pay child support or meaningfully communicate with Timothy for a year

---

[8]    *Bruce L*, 247 P.3d at 969; *see Ebert*, P.3d at 1050.  Bruce was working on a commercial fishing boat at the time of Timothy's birth and unable to immediately care for him.  *Bruce L.*, 247 P.3d at 969.

[9]    *Bruce L.*, 247 P.3d at 970-71.

[10]    *Id.* at 970.

[11]    *Id.* at 971.

[12]    *Id.*

[13]    *Id*.

[14]    *See id.* at 972.  Bruce's paternity was not established during the pendency of the first adoption petition.  *Id.* at 970-71.  Because Bruce was not listed on Timothy's birth certificate and Connie did not sign Bruce's acknowledgment of paternity, *id.* at 969-70, the court ordered paternity testing when the Eberts moved to intervene in Bruce's 2008 custody case, *id.* at 972.  *See* AS 25.20.060 (only a parent can petition for an award of child custody).  Bruce filed test results establishing his paternity in October 2008.  *Bruce L.*, 247 P.3d at 972.

and it granted the adoption in June 2009.[15] Bruce appealed, and we vacated the adoption and remanded for further proceedings.[16]

On remand the superior court reinstated an earlier custody order, giving the Eberts sole physical and legal custody and Bruce supervised visitation.[17] A second adoption trial was held in June and December 2012.[18] The superior court denied the petition for adoption, and the Eberts appealed.[19]

We affirmed the denial of the adoption in December 2014,[20] holding that the superior court had not clearly erred in finding Bruce's failure to support Timothy was justifiable and that his consent was not excused.[21]

### 2. Visitation after the adoption was vacated

In March 2013 the superior court issued a new custody order. It required that Timothy remain in the Eberts' primary physical and sole legal custody, and that Bruce and his family have supervised visits with Timothy at least every other week. The

---

[15] *Bruce L.*, 247 P.3d at 972-73. *See* AS 25.23.050(a)(2).

[16] We vacated the adoption in part because the superior court sua sponte determined Timothy was not an Indian child even though both parties had assumed throughout the proceedings that ICWA applied. *Bruce L.*, 247 P.3d at 976-77. We also reversed the court's findings that there was no justifiable cause for Bruce's lack of communication and that he had not produced evidence showing justification for his non-support. *Id.* at 981.

[17] *Ebert v. Bruce L.*, 340 P.3d 1048, 1052 (Alaska 2014).

[18] *Id.*

[19] *Id.* at 1053.

[20] *Id.* at 1048, 1056.

[21] *Id.* at 1055. We also held that ICWA does not preempt AS 25.23.050(a)(2)(B). *Id.* at 1053-54.

court ordered the Eberts to consult with a licensed professional counselor to develop a less restrictive visitation plan. In May 2013 the superior court ordered Bruce to pay $50 per month in child support, the minimum amount required by law.[22] In October the Eberts filed a motion to stay the custody proceedings pending appeal, which the superior court denied in December.

From March 2013 until April 2015 the Eberts and Bruce's family arranged visits approximately once per month. These visits generally involved Timothy, the Ebert family, and Bruce, his wife, and their daughters. The visits usually included an activity together in a public place. William testified that these visits generally went well until Bruce's family made comments Timothy found distressing. Visitation stopped for several months beginning in April 2015: Holly testified the visits stopped because Bruce never asked for visits; Bruce's wife testified that she asked for visits but the Eberts never responded to her requests.

In August 2015 the Eberts filed a new petition for adoption, again arguing that Bruce's consent was not required because he had not made child support payments for over a year.[23] Two weeks later Bruce filed an application with Child Support Services Division (CSSD) to begin making his child support payments through their office. Bruce was not employed during this period and did not receive paychecks from which CSSD could deduct support payments. He testified that he brought the payments into CSSD. As part of this application, Bruce submitted a form stating he had made $100 child support payments to the Eberts in September 2013, November 2013, August 2014, January 2015, and August 2015. Bruce also alleged the Eberts took Timothy illegally and "bought" him from Connie.

---

[22]    Alaska R. Civ. P. 90.3(c)(3).

[23]    *See* AS 25.23.050(a)(2)(B).

Two months later the Eberts filed a motion to suspend visitation. Their motion argued Timothy did not want to visit Bruce and was experiencing behavioral and emotional problems at home and at school as a result of the visits. The court denied the motion and reaffirmed its order that the Eberts schedule visits with Bruce and his family every other week.

Visits resumed at some point in late 2015 or early 2016.[24] In May 2016 Timothy gave Bruce a letter saying he did not want to visit Bruce anymore. Bruce crumpled up the letter in front of Timothy. Bruce continued to have visits with Timothy through August 2016.

In May 2016 the court appointed a guardian ad litem (GAL) for Timothy and ordered the GAL to file a report advising the court about Timothy's best interests.[25] The GAL reported Timothy's relationship with Bruce had deteriorated, largely because of inappropriate comments made by Bruce and one of his daughters. The GAL was concerned about the impact of visitation on Timothy's emotional health because his behavior had worsened. The GAL concluded it was in Timothy's best interests to remain in the sole legal and primary physical custody of the Eberts.[26]

### 3. The custody and adoption trials

The court scheduled separate trials on Bruce's motion for custody and on the Eberts' petition to adopt Timothy. The custody trial took place in August 2016. Dr. Kristi Fuller, a neuropsychologist with a pediatric speciality, testified as an expert

---

[24] It is unclear from the record exactly when visitation resumed. Bruce's wife testified that visitation resumed in fall 2015, and William testified that the visits resumed in January 2016.

[25] *See* AS 25.24.310; AS 25.23.125.

[26] The GAL also recommended the court consider an open adoption if it decided to terminate to allow Bruce to retain some residual rights.

witness for the Eberts. She had evaluated Timothy in February 2016 and found he had attention issues and was prone to anxiety. She had also reviewed the GAL's report and notes from Timothy's therapist. Dr. Fuller testified supervised visits were likely to cause Timothy anxiety because of events that transpired since her interview with Timothy, especially Bruce's response to Timothy's letter. Dr. Fuller also offered her opinion beyond a reasonable doubt that unsupervised contact between Bruce and Timothy would cause damage and psychological harm to Timothy.

Members of both families testified. Bruce and his wife testified about visitation and their relationship with Timothy. Bruce's wife testified that the visits had been going well until April 2015 but were less successful since the visits resumed a few months later. Bruce testified that the presence of the Eberts strained the visits because they did not support Bruce's relationship with Timothy or try to make the visits successful.

The Eberts also testified about visitation and Holly described Timothy's special emotional needs. She testified that Timothy's feelings about Bruce had been positive until Bruce began telling Timothy the Eberts had taken Timothy. William testified that Timothy became upset and agitated in anticipation of visits. Connie testified that she continued to support the Eberts' adoption of Timothy. The superior court did not rule on custody at the conclusion of the trial.

The adoption trial occurred in November. A representative of Connie's tribe testified in support of the adoption. The Eberts, Bruce, and Bruce's wife testified again, but the superior court limited their testimony to the issues of child support payments and any justification for the failure to make payments. It did not take additional testimony regarding Timothy's best interests or whether continued custody would cause Timothy serious harm and instead relied on the testimony from the custody hearing.

The superior court focused on Bruce's child support payments to determine whether his consent to the adoption was excused. The Eberts both testified that the only child support payment they received between May 2013 and August 2015 was a $50 cash payment at a visit in September 2013. William testified that Bruce began making child support payments through CSSD after the Eberts filed their August 2015 adoption petition. Holly testified that Bruce handed Timothy $50 at an August 2014 visit. She described the August 2014 visit as a celebration for Timothy's birthday and said Bruce told Timothy the money was for a fly rod.

Bruce testified he gave the Eberts $100 in cash as child support payments at visits in September 2013, November 2013, and January 2015. Bruce stated he thought he gave $50 or $100 to William at an August 2014 visit and mentioned it would be nice if Timothy got a fly fishing rod. Bruce's wife testified she had seen Bruce make cash payments at a few visits through the years.[27]

The superior court found Bruce's account of his child support payments was not credible. The superior court found only the September 2013 payment that all parties acknowledged had been made and there had not been another payment within a year. The superior court found Bruce had not made a payment in November 2013 and found the alleged August 2014 payment was a gift to Timothy, noting specifically that Bruce had given the money directly to Timothy while they were celebrating Timothy's birthday.

Following the court's decision that he had failed to provide child support for a year, Bruce attempted to establish that his failure to pay was justified. He argued he was indigent, he had believed CSSD was garnishing his Permanent Fund Dividend

---

[27]     Bruce's wife stated she had seen payments in approximately September 2013, August 2014, and January 2015.

(PFD) for child support, and he had intended the August 2014 payment as child support.

The Eberts' attorney cross-examined Bruce about his finances and introduced bank records from Bruce's joint account with his wife and his wife's bank account. Bruce testified he sometimes bought beer and alcohol for his wife and his neighbor. Bruce also testified he had obtained a loan for $5,000 to pay unrelated legal fees. Bruce acknowledged he was aware of his legal obligation to pay child support and that he knew the year period was significant.

Bruce testified he had never taken any affirmative action to stop CSSD from enforcing the child support order. He testified that he believed CSSD was making monthly payments to the Eberts and that the cash payments he allegedly made were additional payments to ensure the Eberts were getting child support. Bruce also testified that he had intended the August 2014 payment as child support.

During both the custody and adoption trials Bruce made disparaging comments about the Eberts and their attorney, calling the Eberts "rich kid stealers" and "white jerks" and their attorney "the white devil." Bruce alleged they were using the court, taxpayers, and experts to "screw over another Indian family." He also criticized the court, calling the judge "a liar" and saying "shame on you" several times in response to the court's finding that Bruce did not pay child support for the period of one year.

The superior court issued its oral decision on November 22. It found Bruce had willfully failed to pay child support for a year without justification and that his consent to the adoption was therefore not required. The court considered Bruce's financial records and found he had the ability to pay $50 per month in child support. The court looked at Bruce's purchases of alcohol, the fact that his family sometimes ate out, and that he got a loan to pay for an attorney, and concluded that he had not made paying child support a priority. The court did not credit Bruce's testimony that he had believed CSSD was making monthly payments to the Eberts, finding that it was inconsistent with

his testimony that he was making child support payments. The court also found Bruce had not intended to make a child support payment when he gave Timothy cash in August 2014, noting that Bruce's child support order explicitly stated gifts were not child support payments. The court found that his failure to pay was willful, relying on his animosity toward the Eberts and his knowledge that he had a duty to pay child support from the proceedings regarding the earlier adoption petition.

The court found further that the visits with Bruce were detrimental to Timothy and had already "caused [him] severe emotional harm." It found beyond a reasonable doubt that it was in Timothy's best interests to be adopted and granted the Eberts' adoption petition. The superior court issued its written adoption decree a week later.

Bruce appeals.

## III. STANDARD OF REVIEW

"A court's determination as to whether 'a parent's failure to communicate or support a child was without justifiable cause is a finding of fact that we review for clear error.' "[28] "A finding is clearly erroneous when 'a review of the entire record leaves us firmly convinced that a mistake has been made.' "[29] "The superior court's 'factual findings enjoy particular deference when they are based "primarily on oral testimony, because the [superior] court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." ' "[30]

---

[28] *Ebert v. Bruce L.*, 340 P.3d 1048, 1053 (Alaska 2014) (quoting *Bruce L. v. W.E.*, 247 P.3d 966, 973 (Alaska 2011)).

[29] *Osterkamp v. Stiles*, 235 P.3d 193, 196 (Alaska 2010) (quoting *In re Adoption of L.E.K.M.*, 70 P.3d 1097, 1100 (Alaska 2003)).

[30] *In re Adoption of S.F.*, 340 P.3d 1045, 1047 (Alaska 2014) (quoting
(continued...)

"We review de novo the court's conclusions of law, such as whether the superior court's findings and the expert testimony presented at trial satisfy the requirements of ICWA."[31]  "Whether substantial evidence . . . proved beyond a reasonable doubt that granting the parent custody would likely result in serious damage to the child [is a] mixed question[ ] of law and fact."[32]

## IV. DISCUSSION

Bruce argues that the superior court erred in finding that his consent was not necessary for Timothy's adoption and that Bruce's continued custody of Timothy would cause Timothy serious emotional damage beyond a reasonable doubt.  We disagree with both arguments and affirm the superior court's decision.

### A. The Superior Court's Finding That Bruce's Consent Was Excused Was Not Clearly Erroneous.

Alaska Statute 25.23.040(a)(2) requires the written consent of the parent of a minor before the adoption of that minor can be granted, unless an exception applies under AS 25.23.050.  Alaska Statute 25.23.050(a)(2)(B) provides that the consent of a non-custodial parent is not required "if the parent for a period of at least one year has failed significantly without justifiable cause . . . to provide for the care and support of the child as required by law or judicial decree."  The superior court found that Bruce's consent was not necessary under this exception.  Bruce challenges this finding.

---

[30]    (...continued)
*William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011)).

[31]    *Bob S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 400 P.3d 99, 105 (Alaska 2017) (citing *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 961-62 (Alaska 2013)).

[32]    *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 761 (Alaska 2009).

**1.** **The superior court did not err in finding that there was clear and convincing evidence that Bruce did not pay child support for a period of one year.**

The superior court found that Bruce made a child support payment in September 2013 and did not make another child support payment during the following year. Bruce challenges the superior court's finding that the payment he made in August 2014 was a birthday present rather than a child support payment.[33]

A person seeking to adopt a minor child without the consent of the child's parent must show that the parent failed to support the child by clear and convincing evidence.[34] Holly testified that the August 2014 payment was a birthday gift for Timothy, not a child support payment as Bruce claimed in his testimony and on his CSSD application. The superior court found the Eberts' account more credible and found that Bruce had given the cash to Timothy as a birthday present. Bruce argues that, given his undisputed cash child support payment in September 2013, it was error for the superior court to find that the August 2014 cash payment was not also child support due to Bruce's "off-hand comment" about a fly rod. But his argument mischaracterizes the basis for the superior court's determination: The superior court found that the money was a gift because it found that Bruce gave the money directly to Timothy and said he wanted Timothy to have a fly rod.

---

[33] Bruce alleged in his application with CSSD and at trial that he made additional child support payments, but on appeal he challenges only the finding related to the August 2014 payment.

[34] *In re Adoption of J.M.F.*, 881 P.2d 1116, 1118 (Alaska 1994).

"[T]he [superior] court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[35] We therefore defer to the superior court's credibility findings, particularly when based on oral testimony.[36] The court's decision about which payments were made and whether they were made as child support depended almost entirely upon its determination of the credibility of witnesses. And it found that Bruce's testimony about the payment made at Timothy's birthday visit was less credible than the Eberts'. It was not clear error for the court to find that Bruce had not paid child support for a year or more.

> **2.    The superior court did not clearly err in finding that Bruce's failure to pay child support was willful and not justified.**

Once a prospective adoptive parent presents clear and convincing evidence of a parent's failure to support a child for a year, the parent has the burden of proving justifiable cause for that failure.[37] Bruce argues that he was indigent, which would justify his failure.[38] But after considering Bruce's bank statements and related testimony, the court found that he was not indigent for the purpose of paying $50 per month in child support. Because Bruce's testimony and bank statements supported the superior court's determination that his failure to pay child support was not justified by indigency, its finding was not clearly erroneous.

Bruce also argues that his failure to pay child support was justified because CSSD closed his child support case for Timothy in late 2011 without notifying him and did not garnish his PFD for child support when it received the child support order in

---

[35]    *S.F.*, 340 P.3d at 1047 (quoting *William P.*, 258 P.3d at 814).

[36]    *Id.*

[37]    *J.M.F.*, 881 P.2d at 1118.

[38]    *See* AS 25.23.050(a)(2).

2013.[39] The superior court found Bruce's testimony that he believed CSSD was garnishing his Permanent Fund Dividend (PFD) for Timothy's child support was inconsistent with his testimony that he was making child support payments. Nothing in the record contradicts this finding, which was based upon the court's determination of Bruce's credibility. It was not clear error for the superior court to find by clear and convincing evidence that Bruce's failure to pay child support was not justified.

The superior court also found Bruce's failure to pay child support was willful. "[A]bsent the element of willfulness, a parent does not lose the right to consent under AS 25.23.050(a)(2)."[40] If the failure to pay child support "result[ed] from 'circumstances over which [the parent] had no control,'" then the parent retains the right to consent to an adoption.[41] The superior court considered disparaging statements Bruce made about the Eberts during the proceedings and on his CSSD application in making its willfulness finding. The court found that Bruce's comments demonstrated an aversion

---

[39] Bruce applied for services with CSSD to obtain a paternity test in July 2008. William testified that Bruce made a few child support payments between 2008 and 2011 by check to the Eberts' attorney. CSSD records indicate that it sent Bruce a closure letter in December 2011, although Bruce testified he was not sure if he received it. CSSD sent Bruce a letter of introduction in 2013 when it received the new child support order but did not begin garnishing his Permanent Fund Dividend (PFD) for Timothy's child support. Bruce testified that CSSD had garnished his income from commercial fishing and his PFD to pay child support for his other children from previous relationships and he assumed CSSD would garnish his PFD and tax refund to pay child support for Timothy.

[40] *J.M.F.*, 881 P.2d at 1118.

[41] *In re K.L.J.*, 813 P.2d 276, 281 (Alaska 1991) (quoting *In re J.J.J.*, 718 P.2d 948, 953 (Alaska 1986)). *Cf. J.J.J.*, 718 P.2d at 953 ("Circumstances resulting from the noncustodial parent's own conduct cannot excuse such a parent's significant failure to provide support or maintain meaningful communication."); *David S. v. Jared H.*, 308 P.3d 862, 869-70 (Alaska 2013).

to paying child support because of his resentment of the Eberts and his desire not to give any money to "rich white people." Further it noted, despite his argument that he had mistakenly given the August child support payment directly to Timothy, Bruce's child support order explicitly stated that he could not give gifts in lieu of child support. The court also pointed out Bruce's failure to pay child support had been an issue in both of our previous decisions on Timothy's adoption.[42] And Bruce testified that he was aware of his obligation to pay child support. The superior court's finding that Bruce willfully failed to pay child support was not clearly erroneous.[43]

### B. The Superior Court Did Not Err In Finding It Would Cause Timothy Serious Emotional Harm To Be In The Continued Custody of Bruce.

Because Timothy is an Indian child ICWA imposes additional requirements on the termination of his parents' rights and on his adoption.[44] Before a court can terminate parental rights, ICWA requires a finding "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical

---

[42] *Bruce L. v. W.E.*, 247 P.3d 966, 973 (Alaska 2011); *Ebert v. Bruce L.*, 340 P.3d 1048, 1055 (Alaska 2014).

[43] *See In re Adoption of S.F.*, 340 P.3d 1045, 1047 (Alaska 2014).

[44] *See* 25 U.S.C. § 1903(1), (1)(iv) (" 'child custody proceeding' shall mean and include . . . 'adoptive placement' which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption."); *D.J. v. P.C.*, 36 P.3d 663, 669 (Alaska 2001) ("[T]he termination of parental rights subject to § 1912 of ICWA involves higher evidentiary standards and different protections of the rights of the parent . . . ."); *Ebert*, 340 P.3d at 1052-53, 1054 (stating that ICWA may impose additional requirements even after a parent's consent is excused under AS 23.25.050).

damage to the child."[45]  We have required a two-part finding to satisfy this requirement: (1) "the parent's conduct is unlikely to change" and (2) "will likely cause serious harm to the child in the future."[46]

Bruce argues the superior court erred by finding that continued contact between Timothy and Bruce would cause Timothy serious emotional harm.[47]  We disagree.  The record supports the superior court's finding beyond a reasonable doubt on this factual issue.[48]

Dr. Fuller's expert opinion was that unsupervised visitation would, beyond a reasonable doubt, cause Timothy serious emotional harm.  She testified even supervised visitation would likely harm Timothy and cause him anxiety.  Holly and William both testified Timothy became obviously upset and misbehaved around the time of his visits with Bruce.  They also provided the court with evidence of Timothy's

---

[45]     25 U.S.C. § 1912(f).

[46]     *Bob S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 400 P.3d 99, 108 (Alaska 2017) (quoting *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 964 (Alaska 2013)).

[47]     Bruce also argues the Eberts never attempted to comply with the interim custody order's requirement that they develop a plan to work toward less restrictive visitation during the three and a half years between the interim custody order and the adoption trial.  There is some evidence to support Bruce's contention that the Eberts never worked toward less restrictive visitation, but whether the Eberts facilitated visitation in the past is not relevant to determining whether continued visitation with Bruce would cause Timothy serious emotional harm.

[48]     Bruce also argues that the court gave undue weight to the incident where Bruce crumpled up Timothy's letter.  The court found that this incident was detrimental and had a serious effect on Timothy but did not give it undue weight.  The court properly considered the incident and the testimony of Dr. Fuller about its impact, along with the GAL report, Dr. Fuller's testimony about the effect of visitation on Timothy, and Bruce's comments and behavior at visitation and during the trial.

emotional difficulties at school in 2015.  In addition, the GAL reported Timothy's behavior deteriorated as the visits became more frequent and contentious.  Even if Dr. Fuller's testimony alone was not sufficient to support a finding that continued custody would cause Timothy serious emotional harm, the superior court is permitted to aggregate the testimony of expert and lay witnesses to make this finding.[49]

In making this finding, the superior court considered Bruce's behavior in court and testimony about Bruce's behavior during visits with Timothy in addition to Dr. Fuller's testimony.  The court found that Bruce had already caused serious emotional harm to Timothy,[50] and his behavior would continue to harm Timothy and exacerbate Timothy's anxiety and emotional needs.  The superior court had sufficient evidence to support a finding beyond a reasonable doubt that continued visitation would cause Timothy serious emotional harm.[51]

## V.    CONCLUSION

The superior court's findings and decree of adoption are AFFIRMED.

---

[49]    *Thea G.*, 291 P.3d at 964; *see also Marcia V. v. State of Alaska, Office of Children's Services*, 201 P.3d 496, 508 (Alaska 2009) ("The expert testimony constitutes some of the evidence upon which the judge bases this finding.  But it does not need to be the sole basis for that finding . . . .").

[50]    The superior court can use past actions to predict future behaviors of parents in its determination of the likelihood of future harm.  *See Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 767 (Alaska 2009) (citing *J.J. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 38 P.3d 7, 11 (Alaska 2001); *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000)).

[51]    *Cf. Jon S.*, 212 P.3d at 767 ("The record also contains substantial evidence of [the child's] history of physical and emotional problems and attachment disorder, how those problems are connected to Jon's absences from her life, and the risk that disrupting [the child's] current placement would cause her serious emotional and physical harm.").