NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

In the Matter of the Adoption of )
)  Supreme Court No. S-19176
A.C.W., a Minor. )
)  Superior Court No. 3AN-23-00477 PR
)
)  <u>MEMORANDUM OPINION</u>
)  <u>AND JUDGMENT</u>*
)
)  No. 2070 – February 5, 2025
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Jason M. Owens, Law Offices of Blake Fulton Quackenbush, Anchorage, for Bradley O. No appearance by Zane B.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

## I.    INTRODUCTION

A stepfather petitioned to adopt his stepdaughter over the father's objection. After an evidentiary hearing, the superior court found that the father's consent was not necessary for the adoption because he willfully failed to support his daughter for a period of more than a year without justifiable cause. The superior court rejected the father's arguments that there were justifiable causes for his failure to

---

*        Entered under Alaska Appellate Rule 214.

provide support. Because we see no clear error in the superior court's findings, we affirm the court's decision.

## II.   FACTS AND PROCEEDINGS

### A.   Background And Proceedings In Oklahoma

A.C.W. was born to Barbara W. and Bradley O. in Oklahoma in 2019.[1] Barbara and Bradley never married and separated later that same year. While in Oklahoma, Barbara filed a child support case in February 2020 with the Child Support Services (CSS) agency. Shortly thereafter, CSS sent Bradley a notice of child support obligation, which included a request that the court order him to pay Barbara $631.56 per month as well as $2,319.25 in arrearages. Barbara filed a child custody case in Oklahoma district court in June. The child support and child custody cases were consolidated.

After holding a hearing, the court issued a written order in September awarding Barbara temporary sole custody of A.C.W. The order also required Bradley to submit income information to the court within ten days of the issuance of the order and to pay child support to Barbara. Bradley did not submit the required financial information until more than two years later. As a result, the court was unable to calculate and enter a final child support order during that period of time.

Barbara filed and received a victim's protection order in Oklahoma in April 2021. She alleged that Bradley would sit outside her home for hours despite her requests that he stop. She also alleged that Bradley was verbally abusive and threatened to harm her (via text messages). Following the issuance of the protective order, Bradley was prohibited from contacting Barbara. To set up visitation or provide support payments for A.C.W., he was required to communicate through Barbara's attorney or a professional supervisor.

---

[1]    We use initials and pseudonyms to protect the parties' privacy.

Barbara filed a motion in May 2022 for permission to move to Alaska with A.C.W. The court granted her request over Bradley's objection. Barbara subsequently relocated to Alaska with her husband, Zane B., and A.C.W.

**B.     Proceedings In Alaska**

Zane filed a petition for a stepparent adoption of A.C.W. in the superior court in Alaska in February 2023, and the Oklahoma court stayed its consolidated custody case. Bradley opposed Zane's petition for adoption.

The Alaska court held a three-day evidentiary hearing to determine whether Bradley's consent was needed for the adoption. The court heard testimony from Barbara, Bradley, and Barbara's Oklahoma attorney.

Barbara recounted the extent of Bradley's contacts with A.C.W. following the couple's separation. She testified that Bradley inconsistently visited A.C.W. and when he did, he spent most of the time attempting to rekindle his relationship with Barbara. At some point in February 2020 Bradley asked Barbara how he could start paying child support. Barbara gave him instructions on how to submit payments through the CSS portal in Oklahoma, but he wanted to talk about mending their relationship instead.

In addition to her testimony, Barbara provided documentary evidence of Bradley's failure to support A.C.W. Prior to the issuance of the protective order, Bradley would frequently text her offering to pay child support. In the text messages Barbara welcomed Bradley's offers to pay child support and gave him instructions on how to make payments. Instead of following Barbara's payment instructions, Bradley would routinely pivot the conversation to discuss their relationship status. In one text exchange, Bradley offered Barbara $5,000 if she would go on a date with him. Barbara testified that she never received any monetary or in-kind child support payments from Bradley other than a single six-pack of diaper wipes.

Bradley testified that he paid child support "in the beginning" but it was not documented. He said he wanted to pay with checks to keep a record, but Barbara refused.

Barbara's Oklahoma attorney testified that she made numerous attempts on Barbara's behalf to obtain Bradley's financial information so that the Oklahoma court could enter a final child support order. She filed a motion to compel and attempted to "get his income" — which would have resulted in a final child support order — but the Oklahoma court was unable to hear the motion because Bradley's attorney withdrew. According to Barbara's attorney, Bradley did not send any child support payments to her law office or through the CSS portal. Although the Oklahoma court order requiring Bradley to pay child support was only temporary, Barbara's attorney testified that it was fully enforceable under Oklahoma law.

The superior court in Alaska found that Barbara's testimony regarding Bradley's failure to make child support payments was more credible than Bradley's. It found that Bradley had a duty under Oklahoma common law to financially support A.C.W. It also found that Bradley "never paid child support or provided any other type of financial support for [A.C.W.]'s care." Lastly, it found that Bradley did not provide evidence of a justifiable cause for his failure to support A.C.W. In the court's view, Bradley's behavior reflected a pattern: he would offer to pay support, Barbara would welcome the payments and provide instructions, and then he would not follow through. As a result, the court found that Bradley willfully failed to support A.C.W. for a period of more than one year without a justifiable cause and, therefore, his consent to the adoption was not required under AS 25.23.050(a)(2)(B).[2] The court also found that Bradley abandoned A.C.W. for at least six months under subsection .050(a)(1) and that he failed to meaningfully communicate with A.C.W. for at least one year without

---

[2]    *See* AS 25.23.050(a) (providing circumstances under which a parent's consent to adoption is not required).

justifiable cause under subsection .050(a)(2)(A). Only one of the findings under AS 25.23.050(a) is required before the adoption can proceed without the consent of a parent.[3]

Bradley appeals.

## III. STANDARD OF REVIEW

When reviewing a superior court's decision to terminate parental rights, "we will not disturb the lower court's factual findings unless they are clearly erroneous."[4] A finding that a parent failed to support a child without justifiable cause is a finding of fact reviewed for clear error.[5] A factual finding is clearly erroneous "when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[6] "The superior court's 'factual findings enjoy particular deference when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.' "[7]

## IV. DISCUSSION

Ordinarily, the consent of both parents is required in adoption proceedings. However, under AS 25.23.050, consent is not required of:

> (2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency, . . .

---

[3]  *See In re Adoption of S.F.*, 340 P.3d 1045, 1047 (Alaska 2014).

[4]  *In re Adoption of A.F.M.*, 960 P.2d 602, 604 (Alaska 1998).

[5]  *In re Adoption of J.R.S.*, 505 P.3d 234, 239 (Alaska 2022).

[6]  *In re S.F.*, 340 P.3d at 1047.

[7]  *In re J.R.S.*, 505 P.3d at 239 (quoting *In re S.F.*, 340 P.3d at 1047).

(B) to provide for the care and support of the child as required by law or judicial decree . . . .[8]

This statute is strictly construed in favor of the parent.[9] "[P]arents should not be deprived of the fundamental rights and duties inherent in the parent-child relationship except for 'grave and weighty reasons.' "[10] "[A] parent does not lose the right to consent under AS 25.23.050(a)(2)" unless he willfully fails to provide for the care and support of the child.[11]

We analyze whether a parent's consent to adoption is required under this provision using a burden-shifting test. First, the prospective adoptive parent has the burden to "prove by clear and convincing evidence that the natural parent failed to support the child."[12] If met, the burden then shifts to the parent to provide evidence of a justifiable cause for the failure to support the child.[13] If the parent meets that burden, then the prospective adoptive parent must prove by clear and convincing evidence that the parent's failure was without a justifiable cause.[14]

A. **The Superior Court Did Not Clearly Err By Finding That Bradley Willfully Failed To Support A.C.W. For A Period Of At Least One Year Without Justifiable Cause.**

We affirm the superior court's ruling that Zane, A.C.W.'s stepfather, proved by clear and convincing evidence that Bradley willfully failed to support A.C.W. for a period of more than one year, from at least September 2020 to February 2023,

---

[8]    AS 25.23.050(a)(2).

[9]    *In re J.R.S.*, 505 P.3d at 239.

[10]    *D.L.J. v. W.D.R.*, 635 P.2d 834, 837 (Alaska 1981) (quoting *In re Adoption of K.M.M.*, 611 P.2d 84, 87 (Alaska 1980)).

[11]    *Ebert v. Bruce L.*, 340 P.3d 1048, 1055 (Alaska 2014).

[12]    *In re J.R.S.*, 505 P.3d at 243 (quoting *In re Adoption of J.M.F.*, 881 P.2d 1116, 1118 (Alaska 1994)).

[13]    *D.L.J.*, 635 P.2d at 838-39.

[14]    *Id.*

despite having a legal obligation to do so. In response, Bradley did not produce any evidence that his failure to provide support was justified. Thus, the burden of proof never shifted back to Zane.

As a threshold matter, the superior court concluded that Bradley was required by law to support A.C.W.[15] On appeal, Bradley argues that the court's decision was erroneous because the Oklahoma "court had not yet issued a child support order." We see no clear error. To the contrary, the Oklahoma court issued an order in September 2020 directing Bradley to pay child support to Barbara and to submit income information within ten days. Although the court did not issue a final child support order, the lack of a final order during the relevant period was due to Bradley's noncompliance with the requirement to timely submit income information. He did not submit his income information until over *two years* later. If Bradley wanted to dispute the validity of the Oklahoma court's award of child support to Barbara, he should have complied with the court's instructions to timely provide financial information. He cannot rely on his noncompliance to excuse his failure to fulfill his duty now.

Next, the superior court found that Zane proved by clear and convincing evidence that Bradley willfully failed to support A.C.W. from at least September 2020 to February 2023.[16] The court found Barbara's testimony that Bradley did not provide

---

[15] The superior court based its conclusion on Bradley's duty to support his child under Oklahoma common law. *See, e.g.*, *In re Adoption of C.M.G.*, 656 P.2d 262 (Okla. 1982). We need not rely on Oklahoma common law because, regardless of any common law duty, Bradley was required to support A.C.W. under the Oklahoma court's order issued in September 2020. *See, e.g.*, *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005) ("We may affirm a judgment on any grounds that the record supports, even if not relied on by the superior court.").

[16] The superior court found that Bradley failed to support A.C.W. after the parties' relationship ended in September 2019 and continued at least until this petition was filed in February 2023. Although we rely on the Oklahoma court's September 2020 order to locate Bradley's duty to support A.C.W. — rather than the Oklahoma

any support other than a six-pack of diaper wipes more credible than Bradley's conflicting testimony. On appeal, Bradley does not contest the court's finding that he failed to support A.C.W. for a period of more than one year.

Last, the superior court concluded that Bradley failed to meet his burden to provide evidence of a justifiable cause for his failure to support A.C.W. Bradley argues that the court's finding was clearly erroneous because Barbara never asked for support and refused support when he offered it. To demonstrate that Barbara refused child support, Bradley cites a text message exchange in which he offered to send money to Barbara and she replied, "Go fuck yourself. You pay it online. You fucking idiot."

The superior court's finding was not clearly erroneous. Bradley is correct that we have held that an adoptive parent's failure to ask for support is a justifiable cause for a parent's failure to provide support.[17] In *Adoption of J.R.S.*, we held that the adoptive parents' failure to ask the father for support or file an application with the Alaska Child Support Services Division was a justifiable cause.[18] In that case, the adoptive parents had been supporting the child her entire life.[19] The father made numerous child support payments under an administrative order, though the payments were not directed to the child's adoptive parents.[20] Because the adoptive parents did not ask or expect support from the father, we affirmed the superior court's finding that he did not willfully fail to support the child.[21]

---

common law relied on by the superior court — it does not impact our conclusion that his failure lasted until at least February 2023, well over the one-year statutory threshold.

[17] *See, e.g., In re J.R.S.*, 505 P.3d at 243.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

Here, however, a single text exchange cited by Bradley — where Barbara appears to express frustration with his refusal to follow the payment protocol — does not outweigh the mass of evidence demonstrating that Barbara was repeatedly receptive to Bradley's offers to pay child support. Importantly, the superior court found Barbara's testimony on this matter more credible than Bradley's. She instructed him several times on how to submit the payments through Oklahoma's CSS portal. Bradley repeatedly pretended that he sent payments in order to engage Barbara in conversation before expressing his desire to rekindle their relationship. This case is distinguishable from *In re J.R.S.* because Barbara welcomed Bradley's offers of child support, filed an administrative case in Oklahoma to facilitate her request for support, and told him to pay support. We see no clear error in the superior court's rejection of Bradley's argument.[22]

Bradley also argues that the Oklahoma court's failure to issue a final child support order is a justifiable cause for his failure to support A.C.W. This argument is unpersuasive. The Oklahoma court ordered Bradley to pay child support in a fully enforceable order. Any failure by the court to issue a final order identifying the specific amount of Bradley's obligation was caused by his failure — for more than two years — to comply with the court's order to submit income information.

In sum, the superior court found that Bradley willfully failed to support A.C.W. for a period of more than one year despite his legal obligation to do so and that he did not provide evidence that his failure to provide support was justified. The superior court did not clearly err: the evidence provides ample support for the court's

---

[22]     Because Bradley failed to meet his burden to provide evidence of a justifiable cause for his failure to support his daughter, the burden never shifted to Zane to prove by clear and convincing evidence that Bradley's failure to support was without justifiable cause. *See D.L.J. v. W.D.R.*, 635 P.2d 834, 838 (Alaska 1981).

findings that Barbara welcomed Bradley's offers to support A.C.W. and that he failed to follow through.[23]

## B. Bradley's Other Arguments Are Waived And Lack Merit.

Bradley argues that the superior court erred for two additional reasons. First, he argues that the court violated the Full Faith and Credit Clause of the U.S. Constitution because it "failed to give full faith and credit to the proceedings of the Oklahoma court." Second, Bradley argues that the court "committed clear error when it failed to grant" his cross-motion for summary judgment.

Bradley waived his argument under the Full Faith and Credit Clause because he raised the issue in superior court for the first time in his motion for reconsideration. "Generally, 'arguments raised for the first time on reconsideration are waived' but can be reviewed for plain error."[24] Plain error exists "where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[25] There is no plain error here. Although Bradley's argument under the Full Faith and Credit Clause is somewhat opaque, we interpret it as a challenge to the superior court's jurisdiction over the adoption petition. Bradley's argument on appeal is clearly inconsistent with his position before the superior court; there, he argued that Alaska courts have jurisdiction under Alaska law to decide the adoption petition. And Bradley persuaded the superior court to agree with him. Consequently, even if he had not waived his Full Faith and Credit Clause argument, his position on appeal would be

---

[23] Because we affirm the superior court's decision under subsection .050(a)(2)(B), we do not address Bradley's additional arguments challenging the other two grounds relied upon by the superior court.

[24] *Morris v. Morris*, 506 P.3d 8, 14 (Alaska 2022) (quoting *McCarter v. McCarter*, 303 P.3d 509, 513 (Alaska 2013)).

[25] *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001).

barred by the judicial estoppel doctrine.[26]  Bradley's second argument also lacks merit: "[A]n order denying summary judgment on factual grounds is not reviewable on appeal following a trial on the merits."[27]

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decision that Bradley's consent is not required for the adoption of A.C.W.

---

[26]    *See Zwiacher v. Capstone Fam. Med. Clinic, LLC*, 476 P.3d 1139, 1143-44 (Alaska 2020) (applying judicial estoppel doctrine when (1) party's later position is clearly inconsistent with its earlier position (2) party persuaded court to adopt its earlier position, (3) and party asserting inconsistent position would derive unfair advantage or impose unfair detriment on opposing party).

[27]    *Est. of Smith v. Spinelli*, 216 P.3d 524, 528 (Alaska 2009).